**36 So.2d 642**

**PITTMAN v. RIVERSIDE REALTY CO.,
Inc. et al.**

No. 38885.

June 15, 1948.

Rehearing Denied July 2, 1948.

Yarrut & Fishman and J. Richard Reuter, Jr., both of New Orleans, for plaintiff-appellee.

Christovich & Kearney, of New Orleans, for defendant-appellant.

McCALEB, Justice.

Relator, Huston E. Pittman, is a shareholder and a director of Riverside Realty Co. Inc. During the month of August 1947, he requested Theodore A. Pittman, the President of the corporation and his brother, to permit him to inspect its books and records. Upon denial of his request, relator brought the present action against the corporation and T. A. Pittman for a writ of mandamus directing them to grant such permission. Alternative writs were issued, as prayed for by relator, and, upon the return day, the respondents appeared and

resisted the demand by way of exception and answer. After a trial on the merits, there was judgment for relator and respondents have appealed.

The defense to the suit is two-fold,

(1) That relator is a stockholder in a competing business and owns less than 25% of the stock of the respondent corporation, which is the percentage required by Section 38 of the Business Corporation Act No. 250 of 1928, as amended by Act No. 34 of the Fourth Extra Session of 1935, to enable those holding stock in a competitive business to demand the rights and privileges conferred by the Act, and

(2) That the motives and purposes of relator are improper and unreasonable.

It is apt to prescind a discussion of the foregoing propositions in order to state the facts and circumstances which give rise to the controversy. An examination of the testimony discloses but little dispute as to the salient facts, which we find to be as follows:

Respondent, T. A. Pittman, is one of six brothers who came to Louisiana from Mississippi about 20 years ago and entered into the general contracting business. The brothers had little or no education, none of them having progressed further than the third grade in grammar school. T. A. Pittman, however, possessed natural ability for finance and assumed leadership in the ventures hereinafter mentioned. The other brothers are to be classed as field men, mechanics and construction superintendents, whereas, T. A. Pittman was the office man and handled all contacts and negotiations with the business world.

In 1936, a copartnership, Pittman Bros. Construction Company composed of T. A., Huston and E. C. Pittman, was organized to carry on business of general contracting and all the brothers worked with or for this concern. In 1938, the respondent corporation was organized, the subscribing stockholders being T. A. Pittman, Neel S. Flynn and the relator. Another corporation, Pittman Contracting Company, Inc., was formed in 1941 by the six brothers who were its subscribing stockholders. In 1943, Pearl Homes, Inc., was organized by Haston L. Pittman and two dummy subscribers representing T. A. Pittman. State Theatres, Inc. was organized in 1945, the subscribing stockholders being all of the brothers, except David D. Pittman, and two years later, in 1947, Pittman Bros. Construction Co. Inc. was formed by the same five brothers.

The main pursuit carried on by the brothers through the above named companies, except the respondent corporation, was general contracting for themselves and others and the corporations evidently enjoyed considerable prosperity as a result of the construction and sale of dwelling units and other edifices during the war and post war periods. And, as above stated, respondent, T. A. Pittman, was the guiding hand in all operations and owned a vast ma-

jority of the stock in the enterprises. In fact, he testifies that Riverside Realty Co. Inc. (the respondent corporation) is practically owned by him and consists of his personal holdings in real estate; that it is not engaged in the contracting business but that Pittman Contracting Co. has done considerable construction work for it.

Prior to 1947, T. A. Pittman purchased the interest of David D. Pittman in Pittman Contracting Co. Inc. and that brother severed all further connections with the organization. Later on, the remaining four brothers, not knowing the value of their stock in the various enterprises and believing that the interest of David Pittman had been acquired for an amount not commensurate with its real worth, became uneasy as to their position with their brother, T. A. Pittman, and held meetings for the purpose of determining what should be done. As the result of a meeting held in Slidell, Louisiana on August 24, 1947, the four brothers, including relator, being dissatisfied with the way T. A. Pittman was handling their interests, decided that it would be best for them to obtain a settlement from him and embark upon a separate business venture for their own account. Accordingly, on the following day, they contacted T. A. Pittman and informed him that they were not pleased with conditions and that they would like to have their auditors check the books and "pay us what our auditors found on the books being our part of the organization, you see, the Corporation". Upon rejection of their request by T. A. Pittman, the brothers immediately formed another company, Union Construction Co. Inc., severed all connection with the Pittman brothers enterprises and instituted suits (similar to this) in the Civil District Court for permission to examine the books of the various corporations.

The trial judge made the writ peremptory on the ground that, since relator was a director of the Corporation, he had an absolute right to examine the books. Counsel for respondents argue that the judge was wrong in his conclusion for the reason that, although relator was a director, he did not seek to obtain a writ of mandamus on that theory and further that, at all events, he is not entitled to the relief prayed for because he is not in good faith. While we find no error in the resolution of the trial judge, we prefer to rest our conclusion on relator's right as a stockholder as it appears that he is no longer a director, having been dismissed from the corporate board soon after the institution of these proceedings.

Respondents' first point is that, since relator is a stockholder in Union Construction Co. Inc., an alleged competitor, and since he holds less than 25% of the capital stock of respondent corporation, he is barred from examining the books in view of Paragraph III of Section 38 of Act No. 250 of 1928, as amended by Act No. 34 of 1935, the pertinent portion of which reads as follows:

"* * * In case of stock held or acquired by, or held by or through an inter-

posed person for a business competitor, *or a person who is interested in a corporation who is a business competitor, or one who holds stock in said competitive business,* he or it, must own not less than twenty-five per cent of stock issued and outstanding for a period of six months before he, or it, can demand the rights and privileges as set forth in this paragraph." (Italics ours.) [1]

■ The proposition cannot be sustained. Among other things, the contention is based upon the false premise that the Union Construction Co. Inc., in which relator is a stockholder, is engaged in competition with respondent corporation. T. A. Pittman admitted, when placed on the stand under cross-examination, that he formed Riverside Realty Co. Inc. as a holding company for the real estate owned by him and that it is not engaged in the contracting business. Several times in his testimony, when asked the specific question, he remarks that, whenever any houses or other buildings were erected for the respondent corporation, the contracting work was performed by Pittman Bros. Construction Co. or one of the other kindred corporations, as Riverside Realty Co. Inc. "they are not in the contracting business". Union Construction Company, Inc., which had just been organized when relator had requested T. A. Pittman to let him view the books of respondent corporation, is undeniably engaged solely in the contracting business. And this, despite the contention of counsel for respondent that, because the company constructed and owns the building where it maintains its office and rents out the upper floor, it is engaged in a business in competition with Riverside Realty Co. Inc.

■ Counsel further assert that the judge erred in admitting parol testimony offered by relator to show that Union Construction Co. Inc. was not a competitor of respondent corporation, maintaining that the decision should be governed exclusively by the respective charters of the corporations which show that the objects and purposes of the business of each are of a similar nature. But this postulation is not well conceived as it overlooks the provisions of the statute upon which counsel rely. Section 38 of the Act does not deny to a stockholder, who is interested in a corporation which may be authorized to engage in a competitive business, the right of examining the books of the corporation where he does not own 25% of the stock. It withholds the privilege of examination only where the stockholder is interested in a corporation that is actually engaged in a competitive business. The argument of counsel (that the stated corporate objects and purposes control) would lead to many absurd consequences for it is common knowledge that the objects and purposes of

---

[1] The paragraph referred to grants to every stockholder, who shall have been the holder of record of at least 2% of all outstanding shares of the corporation for at least 6 months, the right to examine any and all of the books and records of the corporation and to make extracts therefrom for any proper and reasonable purpose.

the business, as outlined in the charters of most corporations, cover a broad field so as to enable the company to engage in various enterprises if time and circumstances make it necessary or desirable. Thus, under such a ruling, one holding stock in a finance company might be denied the right to look at the books because he owned a share of stock in a brickyard. And so on. In the instant case, it suffices to say that the objects and purposes of the respondent corporation and the Union Construction Co. Inc. are of such scope that either corporation could engage in several types of business. Hence, we hold that parol evidence was properly admitted to determine whether Union Construction Co. Inc. and the respondent corporation are business competitors and that this evidence reveals that they are not.

Finally, respondents contend that the motives of relator are improper and unreasonable; that relator and his brothers have entered into a conspiracy to force T. A. Pittman to settle with them and that they devised and schemed to wreck his business by causing numerous employees to strike.

An examination of the evidence has satisfied us that this contention is wholly without merit. In truth, it appears to us that T. A. Pittman has been most unreasonable in denying relator access to the books of the corporation and we regard his explanation of his own conduct as somewhat ludicrous. He says that he was perfectly willing to let relator look at the books but that he did not want an auditor to examine them as he was afraid that relator would learn some of the business secrets of the corporation. When pressed for an answer as to the type of secret about which he did not wish to give information, he made the fatuous excuse that he did not want relator to ascertain his method of doing business with the Federal Housing Authority and he would have it appear he has devised some secret and intricate method by which he borrows money from this governmental agency.

Nor does Pittman's charge that his brothers have conspired against him impress us in any degree. The facts make it clear that he has, from the beginning, operated the Pittman enterprises as he pleased; that his brothers, who are all minority stockholders, know nothing of the financial end of the business and that they have, for many years, had complete confidence in his judgment. However, this abiding faith in him has been shaken—whether rightly or wrongly is not the question—and relator, as a minority stockholder, is merely requesting that his brother permit him to see the records containing an account of his stewardship. In these circumstances, it affords no valid ground for T. A. Pittman to attempt to deny the right secured to relator by law to inspect the books (see Orlando v. Reliance Homestead Ass'n, 171 La. 1027, 132 So. 777) on the plea that his brothers are conspiring against him by acting in concert in leaving their employment with Pittman enterprises, forming a com-

pany of their own and taking with them many of the key men and valued employees of the business. There can be no doubt of the brothers' right to sever their connection with Pittman enterprises, to engage in business for themselves (competitive or otherwise) and to hire such employees as they see fit. The fact that they have done so does not render their motives impure nor does it make relator's plea improper or unreasonable, as we are convinced that his demand for an examination of the records is to ascertain the manner in which the business has been administered by his brother and to discover the true value of his stock.

The judgment appealed from is affirmed.

O'NIELL, C. J., and HAMITER, J., taking no part.

MOISE, J., recused.